IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| | ) | CR. NO.: 6:05-813 |
| vs. | ) | |
| | ) | |
| Dexter Shawn Medford a/k/a Dexter Shawn Melford, | ) | **ORDER** |
| | ) | (Written Opinion) |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on the Defendant's Motion to Suppress. After considering the submissions and arguments of counsel on November 9, 2005, Defendant's Motion to Suppress is DENIED as hereinafter set forth.

**STATEMENT OF THE CASE**

The defendant, Dexter Shawn Medford and his co-defendant, Anthony Williams, were arrested on a criminal complaint on July 28, 2005, on incident conduct stemming from the night of July 27, 2005. Defendant Medford and co-defendant Williams were arrested for conspiracy and possession with intent to distribute 5 kilograms or more of cocaine. On August 1, 2005, a preliminary hearing and detention hearing were held as to both defendants. Probable cause was found for the arrests and both defendants were detained. Subsequently, both defendants were indicted on a two-count indictment by a federal grand jury on August 9, 2005. Co-defendant Williams entered a guilty plea on September 30, 2005. Williams is the owner of the

1

vehicle where 10 kilograms of cocaine was ultimately located during the traffic stop on July 27, 2005. Williams was also driving the vehicle when he was stopped by the South Carolina Highway Patrol. Mr. Williams has not challenged the stop or seizure of evidence in this case. Mr. Medford was the only passenger in William's vehicle on the night of July 27, 2005. Defendant Medford filed a Motion to Suppress on August 23, 2005 and a second Motion to Suppress on August 24, 2005. A hearing was held before this Court on November 9, 2005.

## **FACTS**

On July 27, 2005, at approximately 10:37 pm, Trooper D. Gilbert (Gilbert) with the South Carolina Highway Patrol, observed a Ford Windstar mini-van swerve into an adjoining lane of travel near mile marker 44 on Interstate 85 in Greenville County, South Carolina. After observing the mini-van nearly side-swipe another vehicle, Trooper Gilbert activated his blue lights and siren and initiated a traffic stop on the vehicle.

Trooper Gilbert approached on the passenger side of the mini-van and as the front passenger window was rolled down, he immediately noticed the smell of air fresheners in the van. After advising the driver that he had almost side swiped another vehicle by crossing into the adjoining right lane of travel, Trooper Gilbert told the driver that he was going to receive a warning for the violation. The driver told Trooper Gilbert that he owned the van and presented a New York driver's license identifying him as Anthony M. Williams. The passenger presented a Washington, DC driver's license identifying him as Dexter S. Medford.

2

Trooper Gilbert noticed that both Williams and Medford appeared nervous and that Medford was breathing rapidly. Medford advised that he lived in New York and was born in Grenada. After Trooper Gilbert asked Williams to exit the van, he then asked Williams where he and his passenger were traveling from. Williams pointed south and could not answer the question. When Trooper Gilbert asked if Williams was born and raised in New York, Williams replied that he was from Jamaica.

Williams further stated that he only knew his passenger by the name "Flex." Williams told Trooper Gilbert that their trip originated in New York and that he and his passenger had left the day before. Williams stated that they were coming from Atlanta on the day they were stopped where Medford had visited with his children. Williams stated that both he and Medford had luggage in the van. Williams further stated that he and Medford were friends and that he drove Medford down to visit his children in Atlanta. When Trooper Gilbert asked Williams if he had anything illegal in the van, Williams replied, "no, you can take a look." Trooper Gilbert asked Williams about some speakers he saw in the back of the van and Williams said the speakers belonged to Medford.

During Trooper Gilbert's conversation with Williams, another highway patrolman (Trooper Harrison), responded to the scene. Harrison began talking with Medford (the passenger) while Gilbert was talking with Williams. Gilbert then walked back to his cruiser. Trooper Harrison came back to Trooper Gilbert and advised him that he observed a knife in the glove box and that Medford was very nervous, warning Trooper Gilbert to be careful. Trooper Harrison also advised that Medford stated that

3

he had been in Atlanta for several days. Trooper Harrison remained with Williams while Trooper Gilbert walked to the minivan to speak with Medford. Medford confirmed that he traveled from New York to Atlanta with Williams and added that they left New York a couple of days ago. When asked about the speakers in the van, Medford initially did not answer but later told Trooper Gilbert that Williams already had them in the van. Trooper Gilbert then asked Medford if he had anything harmful or illegal in his pockets and Medford replied that he did not.

Trooper Gilbert asked Medford if he could pat him down for weapons and asked him how much money he had on his person. Medford consented to the pat-down and told Gilbert that he had about $3,000.00 in his front pocket. When asked if there was anything harmful or illegal in the van, Medford replied "no." Trooper Gilbert found a screwdriver in Medford's front pocket. Medford said he just had the screwdriver and denied that the screwdriver fit anything in the van.

Trooper Gilbert then returned to Williams, asking him if he was responsible for everything in the van. Williams did not reply and when asked again asserted that the speakers belonged to Medford. Trooper Gilbert then gave Williams his driver's license back along with his warning for improper lane change. Williams told Trooper Gilbert that he understood the warning. Trooper Gilbert then asked for consent to search the vehicle. Williams granted consent. Trooper Gilbert, then removed his canine, Ajax, from his police SUV, and began searching the passenger compartments of the mini-van. Shortly after Ajax entered the vehicle, he indicated the odor of illegal narcotics on a blue duffle bag.

A short time later, Trooper Harrison joined Trooper Gilbert in the search of the vehicle. Trooper Harrison noticed that the back tailgate door of the mini-van would not stay up when opened and upon closer inspection with his flashlight noticed what appeared to packages inside the panel of the back door. Trooper Gilbert used the screwdriver that he found in Medford's pocket to remove the screws from the back panel. Shortly thereafter, Williams and Medford were arrested. Ten individually wrapped kilogram packages of cocaine were secured from the back panel of the door.

**LAW**

The government contends that the Defendant Medford does not have standing to challenge the search of the automobile because he was only a passenger. This Court agrees.

In order for Medford to challenge a search successfully under the 4th Amendment, he must have "a reasonable expectation of privacy" in the place or thing that was searched. *Rakas v. Illinois*, 439 US 128, 143 (1978). *See also*, *United States v. Rusher*, 966 F.2d 8686 (4th Cir. 1992)(passenger in vehicle has no reasonable expectation of privacy in items found in the vehicle of another.); See *U.S. v. Carter*, 300 F.3d 415, (4th Cir. 2002) (A passenger in a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object.)

The burden is on the Defendant to prove that he has a reasonable expectation of privacy in the area searched or the item seized. In the instant case, Williams was

5

the driver and owner of the vehicle. While Williams claimed Medford owned the speakers found in the car, Medford claimed the speakers were there when he got into the car. Further, Medford claims no ownership interest in the automobile whatsoever.

Clearly the Defendant Medford has not asserted any property or possessory interest in the seized vehicle that would entitle him to a reasonable expectation of privacy in the area searched or the item seized. *See United States v. Wellons*, 32 F.3d 117 (4th Cir.1994)("[o]ne who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile...." *Wellons*, 32 F.3d at 119. Therefore the Defendant lacks standing to bring this challenge and his Motion to Suppress is DENIED. Because the standing issue is dispositive of this motion, this Court need not address Defendant's remaining issues.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress be DENIED.

IT IS SO ORDERED.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina

December 22, 2005.

6